STATE of Missouri, Respondent,

v.

John H. HECKMAN, Appellant.

No. KCD 27333.

Missouri Court of Appeals,
Kansas City District.

Dec. 2, 1974.

Motion for Rehearing and/or Transfer
Denied Dec. 30, 1974.

Willard B. Bunch, Public Defender, Sixteenth Judicial Circuit, and Douglas N. Merritt, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., and G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P. J., and SWOFFORD and SOMERVILLE, JJ.

PRITCHARD, Presiding Judge.

This is an appeal from a conviction and a six month sentence for escape from a county jail after conviction. § 557.380, RSMo 1969, V.A.M.S.

On December 11, 1973, appellant, upon his plea of guilty to "forgery—using and uttering", was convicted and sentenced to six months confinement in the Jackson County Jail, Division of Health and Welfare. On the same day the court ordered that appellant be granted a stay of execution until January 11, 1974. According to Carol Shanahan, criminal records clerk of the Jackson County Department of Corrections, also known as the Jackson County Jail, the records thereof, in evidence, show that appellant was "booked in the jail" on January 16, 1974. Being under a six month sentence, appellant's "out-date" would have been May 21, 1974. On January 30, 1974, appellant was transferred to the Municipal Corrections Institution, which is minimum security. Further explaining that procedure, Carol testified, "It is a medium security facility run by the City and we have a housing contract with the State. Prisoners that we have to transfer, our inmates, out there, if they are, you know, if they are sentenced on a misdemeanor charge and they are not, there is no outstanding warrants on them and that qualifies them to go to the farm." When a prisoner is sent to the farm, the Kansas City Correctional Institution, M.C.I., it is normally done when a man is considered to be a good risk.

John Noll, clerk typist and records clerk for the Municipal Correctional Institution of Kansas City, testified that the records showed that appellant was received by M.C.I. on January 30, 1974, with a tentative release date of May 21, 1974. M.C.I. is not the county jail. "Q (By Mr. Merritt) One other thing, Mr. Noll, when you receive a prisoner from the county jail and you sign him in, you send him back here, whose prisoner is he? A The man is still a county prisoner but he is being held by us through a contract we have through the county. Q You have a contract with them? A Yes. M.C.I. has a contract with the county to hold certain prisoners for the county, to house certain prisoners." Appellant escaped from a city facility.

Corrections Officer Steve Green worked in the "dorm" of M.C.I. About 4:00 a. m. on February 2, 1974, in the course of awakening the kitchen help, Green found that appellant was not in his bunk. Green searched the area and the premises and could not find appellant anywhere around. Appellant was next seen by City Patrolman, Gary Gill, on February 21, 1974, sitting in a parked pickup truck in front of 707 Paseo, where he was arrested.

In his sole point, appellant claims that he was entitled to a judgment of acquittal because it is not an offense against the state of Missouri for a state prisoner, being held in the city jail after conviction of a crime, to escape therefrom.

There is an anomaly in the two statutes, concerning escape from jail. § 557.380 provides merely that any person who being confined in any county jail upon conviction for any criminal offense, or held in custody going to such jail, shall break prison or custody, and escape therefrom, shall on conviction be punished. § 557.390, concerning the offense of breaking jail and escaping *before* conviction, provides additionally, "If any person lawfully imprisoned or detained in any county jail *or other place of* imprisonment, or in the custody of any officer, * * * before conviction, * * * shall break such prison or custody and escape therefrom, he shall, upon conviction, be punished * * *." [Italics added.] The problem here is that since § 557.380 omits the phrase "or other place of

confinement" can a charge be sustained when the escape is from a city facility which is not a county jail in a strict sense?

The contract between Kansas City and Jackson County, referred to in the above testimony, is not in evidence. Nor is any ordinance of the City or of the County Legislature in evidence. No point, however, is made by appellant by this lack of documentary evidence. There is constitutional and statutory authority for the making of such a contract between the county and the city. Mo.Const. Art. VI, § 16, V. A.M.S., provides: "Any municipality or political subdivision of this state may contract and cooperate with other municipalities or political subdivisions thereof, or with other states or their municipalities or political subdivisions, or with the United States, for the planning, development, construction, acquisition or operation of any public improvement or facility, or for a common service, in the manner provided by law." The enabling Act is § 70.220, RSMo 1969, V.A.M.S., which first substantially follows the constitutional language, and then adds the proviso that the subject and purposes of a contract or cooperative action shall be within the scope of the powers of the municipality or political subdivision, and if entered into by an elective or appointive official of such body, it must be approved by the governing body of the unit of government in which he resides. Note also § 71.300, authorizing counties and cities or towns to erect and maintain courthouses and jails for their joint use at county seats; and Op.Atty.Gen. No. 50, Keeler, 2–2–68, construing this section, § 70.220, and the constitutional and statutory provisions as authorizing the joint erection of a jail by Pettis County and the City of Sedalia. The contract here referred to in the testimony is thus clearly authorized by the Constitution and statutes.

Appellant relies upon State v. Owens, 268 Mo. 481, 187 S.W. 1189 (1916), for his contention that escape from M.C.I. is not escape from the county jail within the

meaning of § 557.380. In that case the indictment alleged that defendant had been convicted of the offense of felonious assault, fined $100.00, and on default of payment, was committed to the county jail, and it was further ordered that he be placed in the custody of the street commissioner and guard of the city of West Plains, to work out the fine and costs. Defendant, as charged, broke custody, ran away and escaped from the street commissioner "and guard." The conviction was reversed and defendant was discharged. The court said, "It will be noted that the above section [§ 4381, RS 1909, the predecessor statute to § 557.380] limits the violation to a breaking and escaping from a 'county jail' or from 'custody going to jail,' and the statute in no manner undertakes to prescribe a penalty for escaping from a street commissioner into whose custody he is placed for the purpose of being worked upon the streets, as charged in the present indictment." The Owens case may be distinguished: The defendant was not, at the time of his escape, *confined* in a county jail. [Note, however, the present statute, § 221.180, RSMo 1969, V.A.M.S. (As amended, Laws 1963, p. 392, § 1; Laws 1965, p. 95, § 2) providing that escape from a work detail shall carry a penalty of an additional term in the county jail not to exceed one year.]

The court in the Owens case relied upon State v. Chapman, 33 Kan. 134, 5 P. 768 (1885), as does appellant here. Chapman may be likewise distinguished. There the defendant was convicted before the police judge of the city of Jamestown for an offense against the ordinances of the city. He was sentenced to confinement in the *city prison* until the fine and costs were paid, from which he escaped. The court quashed the information and discharged the defendant and the state appealed. The court held that one statute providing for penalties for escape from a prison or custody where confined for less than life could not apply because defendant was not sentenced to city prison for any regular or specified term, and that it was not in the

mind of the legislature to punish one under that section where he escaped from prison where he was committed merely for non-payment of a fine. The second statute, § 182, Kans.Comp.Laws, 1881, which is much like § 557.380, supra, also could not apply because it had reference to persons confined in a county jail, and it could not be judicially interpolated into the statute that a "city prison" was a "county jail."

The rationale of Pons v. State of Florida, 278 So.2d 336 (Fla.App.1973), is here applicable. Pons was arrested upon multiple warrants charging him with the crime of forgery. He was first incarcerated in the Alachua County Jail by the sheriff, and was later transferred for lodging and further confinement to the City of Gainesville municipal jail. That transfer was effectuated under an intergovernmental compact between the city and the county, executed pursuant to statute, "in order to alleviate over-crowding at the respective jail facilities." Seeking reversal of a judgment of conviction for the crime of escape from a prosecution, Pons contended that there was a variance between the gravamen of the information that he escaped " 'the lawful custody of the Sheriff of Alachua County' and the evidence adduced showing that he escaped while under actual confinement of the municipal jailer of the City of Gainesville." The court rejected the contention, holding, 278 So.2d 338, "The transfer of appellant for lodging to the municipal jail under the inter-government compact, was not inconsistent with nor exclusive of the legal custody of the Sheriff. Under that agreement the Sheriff retained the power and ability to control the continued incarceration of the person of the appellant subject to the orders of the Court exercising jurisdiction over him. This retained control by the Sheriff satisfied the requirements of lawful custody, albeit constructive in nature so that the escape therefrom was unlawful. (Citing cases.)"

Neither the Owens case nor the Chapman case involved contracts between two units of government for administrative transfer of prisoners for confinement or lodging. The crowded condition of the Jackson County Jail is a well-known fact, and the intergovernmental contract is obviously entered into to alleviate the situation. Following the Pons case, it must be held that M.C.I. is but an extension of custody, or constructive custody of those in charge of the Jackson County Jail, and vice versa. To hold otherwise would tend to be destructive of the salutary purposes of the contract between Jackson County and Kansas City, which is authorized by the constitutional and statutory provisions.

The judgment is affirmed.

All concur.